RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE _____
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TONY M. BANKS,<br>      Petitioner<br><br>VERSUS<br><br>WARDEN, LOUISIANA STATE<br>PENITENTIARY,<br>      Respondent | CIVIL ACTION<br>SECTION "P"<br>1:09-CV-02101<br><br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

**consolidated with**

| | |
|---|---|
| TYRONE BANKS,<br>      Petitioner<br><br>VERSUS<br><br>WARDEN, LOUISIANA STATE<br>PENITENTIARY,<br>      Respondent | CIVIL ACTION<br>SECTION "P"<br>1:09-CV-02106<br><br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Before the court are two petitions for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioners Tony M. Banks ("Tony") and Tyrone Banks ("Tyrone"), on December 2, 2009. Tony and Tyrone, twin brothers who were convicted in a consolidated trial, are contesting their August 2000 convictions and sentences by a jury in the Louisiana 7th Judicial District Court, before

Judge Leo Boothe in Concordia Parish, on five counts of armed robbery and one count of attempted armed robbery.[1]  Tony and Tyrone were each sentenced to a total of 544 ½ years imprisonment.  Tony and Tyrone each raise the following grounds for habeas relief:

> 1. Defendants were denied due process and a fundamentally fair trial as well as the effective assistance of counsel because they and their co-defendants, having adverse interests, were jointly represented and tried, presenting a conflict of interest.
>
> 2. The prosecutor's opening remarks regarding Easley's prior guilty pleas were plain error.
>
> 3. The defendants were denied due process and a fundamentally fair trial due to the trial judge's failure to instruct jurors concerning flight.
>
> 4. The cumulative armed robbery charges tried jointly constituted double jeopardy.
>
> 5. The defendants were denied their rights to confrontation and cross-examination of one of the robbery victims, JoAnn Davis, because she was away on vacation during the trial, in violation of the Sixth Amendment.
>
> 6. The cumulative errors involved in this case demonstrate fundamentally unfair convictions in violation of the Fourteenth Amendment.
>
> 7. The defendants had ineffective assistance of counsel due to defense counsel's (1) failure to request pretrial discovery and failure to conduct minimal pretrial investigation, (2) a conflict of interest in representing both Banks and their co-defendants, and failure to request a severance, (3) failure to file a motion to quash the indictment, (4) failure to request continuance or to object on grounds of confrontation hearsay when one of the victims, JoAnn Davis, was not present for trial, (5) failure to request a special jury charge on flight,

---

[1] A habeas petition by Banks' co-defendant and twin brother, Tyrone Banks, is also currently before this court, at U.S. v. Banks, No. 09-cv-02106.

(6) failure to file a pretrial motion to suppress inculpatory statements and evidence, (7) failure to file a motion for reconsideration of sentence, post-judgment verdict of acquittal, or motion for new trial, (8) failure to object or request mistrial when a state witness testified concerning other crimes evidence, (9) failure to object when jurors were permitted to retire for deliberation with written jury charges in their possession, and (10) the cumulative effect of defense counsel's errors. In addition, Tyrone contends defense counsel erred in failing to request a severance and instead requested joinder,

Tyrone also raised the following additional grounds for relief: (1) petitioner's due process fair trial rights were violated when the jury was permitted to take written jury instructions into deliberations without defense approval, and (2) it was reversible error for the prosecution to elicit commitments and promises from prospective jurors during voir dire.

The Respondent answered the petition (Doc. 21). Petitioners allege, and the Respondent does not dispute, exhaustion of their state court remedies. Petitioners' habeas petitions are now before the court for disposition.

<u>Facts</u>

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal in an unpublished opinion (Doc. 26), are as follows:

"Around 9:00 p.m. on April 2, 2000, twins Tony and Tyrone Banks, along with Stanton Easley, entered Pizza Hut in Vidalia, Louisiana, wearing masks and carrying guns. Although the State charged Easley in the same bills of information as the Banks Defendants, at some point, he apparently entered guilty pleas. He testified at trial, claiming responsibility for the two incidents. They

3

ordered the three employees to give them money.  Charles Jones, the cook, testified that the tall perpetrator (apparently Easley) hit him on his head twice with a pistol when he said he could not open a safe.  He testified that he begged for his life and was told that he was going to be killed.  He saw the two other men had guns and one of them pulled his co-worker by her hair. He also testified that the three men threw his two co-workers on top of him and then left when the phone rang.

"Audrey Honea, a waitress, testified that one of the men grabbed her by the hair, pulled her to the cash register, and ordered her at gunpoint to open the cash register or he would kill her.  She testified that she gave the man the money from the cash register.

"Netairre Demby, the shift manager, testified that the three men came into the restaurant each with a gun.  She testified that she was ordered to get the money out of the safe which she did.  She further testified that she heard one of the men say that she would be killed.

"On April 3, 2000, shortly after 5:00 p.m., the Banks Defendants and Easley entered the EZY Pay Furniture Company in Ferriday, Louisiana, while Defendant Hawkins remained in the car.

"Dennis Anderson the owner of the store, testified that he and his wife and several employees were in the store when a tall man (apparently Easley) and two shorter men entered the store.  The men had guns raised in the air, wore bandanas as masks, and hollered that Anderson and the others would be killed if they did not get down on the floor.  Anderson testified about the terror he felt during this incident.  One of the men put a gun to his head to get him to open a nonexistent safe in the store; he though he would be shot.  He also testified that the men took his wallet containing money from him.

"Melvin Scott, a part-time employee at EZY Pay Furniture Company, testified that the two shorter men came in with guns and demanded that he and the others get on the floor.  Scott stated that when he was on the floor, one of the men took his wallet; he also thought he and the others would die.

"Gloria Gunter, an employee at EZY Pay Furniture Company, testified that three men with guns came into the store on

4

April 3, 2000 and took her purse which contained
$1,300.00 cash in a white envelope.  She testified that
the men were extremely agitated and threatened her with
her life.  Additionally, she testified that the tall man
and one of the shorter men were in the office area of the
store with her when they took money from the desk drawer.

"The final count of armed robbery relating to EZY Pay
Furniture Company involved JoAnn Davis, another store
employee, who did not testify at trial because she was on
vacation.  Both Linda Anderson, Dennis Anderson's wife,
and Gunter testified that they saw Davis take items out
of his [sic] pockets when ordered to do so by the men.

"After the men took money and other items at gunpoint
from these people, they pushed all except one victim into
a confined area in the back of the store and then left in
the waiting car.  The police began following the car
shortly afterwards and pursued it in a high-speed chase.
The Defendants' car eventually spun out of control near
muddy fields.  All four occupants exited the car and
began running.  The police chased the men and eventually
apprehended all of them."

### Rule 8(a) Resolution

This court is able to resolve the merits of this <u>habeas corpus</u>
petition without the necessity of an evidentiary hearing because
there is no genuine issue of material fact that is relevant to the
petitioner's claims, and the State court records provide the
required and adequate factual basis necessary to the resolution of
the habeas corpus petition.  <u>Moya v. Estelle</u>, 696 F.2d 329, 332-33
(5th Cir. 1983); <u>Easter v. Estelle</u>, 609 F.2d 756, 761 (5th Cir.
1980); Habeas Corpus Rule 8(a).

### Standard of Review

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall

be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court

6

decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. Martin, 246 F.3d at 476, and cases cited therein.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under Section 2254 unless the harmlessness determination itself was unreasonable. Mitchell v. Esparza, 540 U.S. 12, 124 S.Ct. 7 (2003). Moreover, in Section 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness. Fry v. Pliler, 551 U.S. 112, 127 S.Ct. 2321 (2007). The Court should treat the error as if it affected the verdict, and the State bears the burden of persuasion as to the harmlessness of the error. Fry, supra.

Grounds Nos. 1 & 7 - Joint Representation

Tony and Tyrone contend they were denied due process, a fundamentally fair trial, and the effective assistance of counsel because they and their co-defendants, having adverse interests, were jointly represented and tried, presenting a conflict of interest.

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. This right has been accorded not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Mickens v. Taylor, 535 U.S. 162, 166, 122 S.Ct. 1237, 1240 (2002), citing U.S. v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039 (1984).

Assistance which is ineffective in preserving fairness does not meet the constitutional mandate, but defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation. As a general rule, a defendant alleging a Sixth Amendment violation must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Mickens, 535 U.S. at 166, 122 S.Ct. at 1240, citing Strickland v. Washington, 466 U.S. 668, 685-686, 104 S.Ct. 2052 (1984).

An exception to this general rule spares the defendant the need to show probable effect upon the outcome, and the courts

simply presume such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. <u>Mickens</u>, 535 U.S. at 166, 122 S.Ct. at 1240-1241, and cases cited therein. Circumstances of that magnitude include when the defendant's attorney actively represented conflicting interests. <u>Mickens</u>, 535 U.S. at 166, 122 S.Ct. at 1241.

There are several scenarios for conflict of counsel to which different rules apply. In <u>Holloway v. Arkansas</u>, 435 U.S. 475, 98 S.Ct. 1173 (1978), the Supreme Court held that an automatic reversal applies where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict. <u>Mickens</u>, 535 U.S. at 168, 122 S.Ct. at 1241-1242. In <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S.Ct. 1708 (1980), the court held that a trial judge's duty to inquire into the propriety of a multiple representation is required only when the trial judge knows or reasonably should know that a particular conflict exists. The <u>Sullivan</u> court further held that, where a defendant does not object to multiple representation, and the trial judge does not know and the situation does not indicate the judge reasonably should know that a conflict exists, a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation. <u>Mickens</u>, 535 U.S. at

168-169, 122 S.Ct. at 1242. When the trial judge has no duty to inquire (because the situation does not suggest that the trial judge should have reasonably known about any conflict), the defendant must demonstrate that an actual conflict of interest adversely affects his lawyer's performance. Sullivan, 446 U.S. at 348. In Mickens, 535 U.S. at 175, 122 S.Ct. at 1245, the court concluded that Sullivan applies when a defendant shows that his counsel actively represented conflicting interests, distinguishing such claims from those where counsel previously represented another defendant in a substantially related matter.

Lawyers are charged with the knowledge that they are obliged to avoid such conflict. A judge can avoid the problem by questioning the defendant, at an early stage of the criminal process, in any case presenting a situation that may give rise to conflict, in order to determine whether the defendant is aware of the possible conflict and whether he has waived his right to conflict-free representation. Burger v. Kemp, 483 U.S. 776, 800, 107 S.Ct. 3114, 3129 (1987). In a situation where a defendant did not raise the conflict issue at trial, but the situation (involving an apparent conflict) nevertheless triggered the trial judge's constitutional duty to inquire and the judge did nothing, the state court should hold a hearing to determine whether the conflict of interest actually existed at the time of trial and affected the adequacy of defendant's representation; a petitioner need not

10

demonstrate prejudice in order to obtain relief.  <u>Mickens</u>, 535 U.S. at 171-172, 122 S.Ct. at 1243-1244, citing <u>Sullivan</u>, 446 U.S. at 349-350, 100 S.Ct. 1708.

The existence of an actual conflict does not warrant setting aside the conviction in a criminal proceeding if the error had no "adverse effect" on the judgment.  Adverse effect is not the equivalent of prejudice, or the reasonable probability of a different result.  Injury sufficient to justify reversal is presumed from the showing of adverse effect.  <u>U.S. v. Greig</u>, 967 F.2d 1018, 1024 (5th Cir. 1992), and cases cited therein.  Also, <u>Mickens</u>, 535 U.S. at 173, 122 S.Ct. at 1244.  An actual conflict of interest means a conflict that affected counsel's performance - as opposed to a mere theoretical division of loyalties.  A defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.  <u>Mickens</u>, 535 U.S. at 171, 122 S.Ct. at 1243, citing <u>Sullivan</u>, 446 U.S. at 349-350, 100 S.Ct. 1708.

In a case of joint representation of conflicting interests the evil is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.  <u>Burger</u>, 483 U.S. at 800, 107 S.Ct. at 3129, citing <u>Holloway v Atkansas</u>, 435 U.S. at 490, 98 S.Ct. at 1181.  When a petitioner's claim is premised solely upon what a conflicted lawyer failed to do on his or her

11

behalf, the petitioner must generally establish adverse effect by demonstrating that there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict.   Perillo v. Johnson, 205 F.3d 775, 807 (5th Cir. 2000).

A conflict will be found when the testimony of one codefendant inculpates another, White v. United States, 396 F.2d 822, 823-24 (5th Cir. 1968), or when procedures or tactics are pursued that benefit one codefendant while harming another.   Holland v. Henderson, 460 F.2d 978 (5th Cir. 1972); Baker v. Wainwright, 422 F.2d 145 (5th Cir.), cert. den, 399 U.S. 927, 90 S.Ct. 2243 (1970). A conflict of interest also exists whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing.   Foxworth v. Wainwright, 516 F.2d 1072, 1076 (5th Cir. 1975).   There is a conflict of interest inherent in allowing defense counsel to simultaneously advise a codefendant who has agreed to testify for the government.   U.S. v. Alvarez, 580 F.2d 1251, 1258 (5th Cir. 1978).   An attorney has a duty to zealously advocate on a client's behalf, unhampered by any competing commitments to other clients. Perillo, 205 F.3d at 801,citing Nealy v. Cabana, 782 F.2d 1362, 1365 (5th Cir.), cert. den., 107 S.Ct. 83, 479 U.S. 819 (1986), and Alvarez.

Assuming the defendant establishes an actual conflict that adversely affected counsel's performance, prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial. Unconstitutional multiple representation is never harmless error. The determination of actual conflict and adverse effect is tightly bound to the particular facts of the case. Perillo, 205 F.3d at 781-782 , and cases cited therein.

In the case at bar, to demonstrate his counsel's conflict of interest, Tony and Tyrone allege that they, Stanton Easley, and Anthony Hawkins were tried together and represented by the same court-appointed attorney, Derrick Carson, throughout the pretrial and trial proceedings (Doc. 1). Petitioners further allege that Easley pleaded guilty on the second day of trial, before any evidence or testimony had been presented (Doc. 1). Petitioners contend that, on the second day of trial, while being Boykinized, Easley incriminated his co-defendants by telling the judge they had participated in the robberies (Doc. 1). Petitioners also allege that, when Hawkins was arrested, he gave a recorded statement to the police in which he stated that Tony and Tyrone held a gun to his head and forced him to be the look-out while they committed the robbery, and that he was afraid Tony and Tyrone would kill him if he did not comply; that statement was played to the jury at trial (Doc. 1).

13

At a post-trial evidentiary hearing in February 2008, attorney Carson testified that he did not object to his multiple representation of the defendants, stating that, in 2000, he did not believe that was an ethical violation (Doc. 48-4). However, as petitioners correctly point out in their briefs, the issue is whether Tony and Tyrone were denied effective representation at trial due to Carson's conflicting representation, rather than whether Carson committed an ethical violation.

Tony testified at the February 27, 2008 evidentiary hearing that Carson never talked to him about the fact that he may have a conflict of interest in representing all four co-defendants (Doc. 1, Ex. 3, p. 11) and that no one in or out of court advised him of his right to an independent counsel or that there was a conflict of interest between the co-defendants (Doc. 1, Ex. 3, pp. 12, 17; Doc. 48-4, p. 26/84). Tony testified that he did not waive his right to conflict-free counsel (Doc. 1, Ex. 3, p. 17). Tony testified that attorney Carson spoke to Tony, Tyrone, and one of the other co-defendants together (Doc. 48-4, p. 25/84) about accepting a plea bargain to plead to two counts of armed robbery and the other four counts would be dismissed (Doc. 1, Ex. 3, pp. 11, 12-13; Doc. 48-4, p. 27/84). About one month later, they went to trial (Doc. 48-4, p. 25/84). Tony further testified that, on the first morning of trial, attorney Carson told Tony that Easley had already pleaded guilty that morning (Doc. 1, Ex. 3, pp. 11-12); Tony testified he

14

did not ask Carson to have Easley testify on his behalf at trial (Doc. 48-4, p. 26/84). Tony also testified that no one had told him that Hawkins had made a statement to the police that could and would be used against him (Doc. 1, Ex. 3, p. 12).

Tyrone Banks testified at the February 27, 2008 evidentiary hearing that he was tried with his brother, Tony, and Hawkins, and they were all represented by Carson at trial (Doc. 48-4, p9. 29-30/84). Tyrone testified that no one ever advised him in court or out of court that Carson could have a conflict of interest in representing all of the co-defendants and he did not waive that conflict (Doc. 48-4, p. 31/84). Tyrone also testified that Hawkins' statement was played for the jury and that, in the statement, Hawkins stated he and Banks held a gun on him and forced him to stay and watch for the police (Doc. 1, Ex. 3, p. 16; Doc. 48-4, p. 30/84). Tyrone testified that he did not ask Carson to call Easley as a witness for the defense (Doc. 48-4, p. 31/84).

Attorney Carson testified at the February 27, 2008 hearing that he was appointed to represent all four co-defendants, that he talked to Tony and Tyrone prior to trial concerning the potential conflicts in being tried with Hawkins and the possibility of *severing* their trials from those of Easley and Hawkins (Doc. 1, Ex. 3, pp. 20-21; Doc. 48-4, p. 35/84). Carson could not recall whether he had filed a motion to sever the trials (Doc. 1, Ex. 3,

p. 21; Doc. 48-4, p. 35/84).[2] Carson also testified that he talked to all four of the defendants about the consequences of being tried together and told them they were each entitled to have their own trial (Doc. 1, Ex. 3, p. 23). When asked whether he advised the Banks brothers that they had a right to have their own counsel, since Carson was representing all four defendants, Carson testified that they Banks brothers were knowledgeable criminals who probably already knew that; however, he did not remember whether he talked to them about it (Doc. 1, Ex. 3, pp. 23-24). Carson also testified that, although the Banks brothers and Hawkins "knew" Easley had pleaded guilty prior to trial, he did not advise them about Easley's sentence (Doc. 1, Ex. 3, p. 24). Carson testified that the idea of calling Easley as a defense witness was one of the Banks' brothers ideas (Doc. 1, Ex. 3, p. 24).

A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing. U.S. ex rel. Gray v. Director, Dept. of Corrections, 721 F.2d 586, 596-597 (7th Cir. 1983), cert. den., 466 U.S. 909, 104 S.Ct. 1690 (1984), citing Foxworth v. Wainwright, 516 F.2d at 1076(conflict of counsel who

---

[2] There is no motion to sever in the trial record (Doc. 46). The only pretrial motions filed by Carson appear to be a motion for a preliminary examination and a motion to reduce bond (Doc. 46, pp. 30-31; Doc. 49, pp. 23, 24).

jointly represented three codefendants with conflicting defenses
was apparent early in the trial). Continued representation of two
defendants with inconsistent stories violates the defendants' Sixth
Amendment right to effective counsel. Baty v. Balkcom, 661 F.2d
391, 397-398 (5th Cir. 1981), cert. den., 456 U.S. 1011, 102 S.Ct.
2307 (1982).

In the case at bar, defense counsel represented four co-
defendants, but did not present a common defense for all four
defendants. One defendant, Easley, decided to plead guilty to two
counts of armed robbery and one count of possession of a firearm by
a convicted felon, pursuant to a plea bargain before any testimony
was adduced at trial. Easley pleaded guilty on August 14, 2000 and
made a statement at that time which incriminated his co-defendants
(Doc. 54, Tr. pp. 246-257). Since Easley was represented by the
same attorney as three co-defendants, it was readily apparent at
that point, at the beginning of trial, that defense counsel was
actively representing conflicting interests. Compare, Perillo v.
Johnson, 205 F.3d 775 (5th Cir. 2010). Since trial Judge Leo
Boothe knew or reasonably should have known at that time that
defense counsel was actively representing conflicting interests,
Judge Leo Boothe had a duty to inquire into the propriety of
defense counsel's multiple representation of all four defendants
and failed to do so.

Moreover, Hawkins' statement to the police made it clear that

17

Hawkins' defense was that the Banks brothers coerced him into participating in the robberies.  Therefore, Carson's concurrent representation of Hawkins and the Banks brothers was a readily-apparent conflict.  Hawkins' defense was very damaging to the Banks brothers' defenses.

Given the facts that Hawkins' defense was that the Banks' brothers coerced him into participating in the robberies with him and Easley gave a statement to the court that Tony, Tyrone and Hawkins had participated in the armed robberies with him,[3] it is painfully clear that attorney Carson placed Tony and Tyrone Banks' interests secondary to those of Hawkins and Easley.  In this case, the conflict of interest existed because two defendants stood to gain significantly by counsel negotiating a plea agreement and advancing plausible arguments that were damaging to the causes of their two codefendants, whom counsel was also representing.  Carson's loyalties were clearly divided between his four clients, to the detriment of Tony and Tyrone Banks.

Since Tony and Tyrone have proven a conflict of interest, prejudice is presumed, and Tony and Tyrone are entitled to reversal of their convictions.

Petitioners also allege they had ineffective assistance of

---

[3] Carson also called Easley as a defense witness to testify that he was the person who initiated the robberies and got the other defendants involved in them.  Carson testified at the hearing that Easley's testimony was intended to be exculpatory to the Banks.  Obviously, Easley helped proved the Banks' guilt.

counsel through counsel's conflict of interest in representing both Banks and their co-defendants, and his failure to request a severance of the trials. Given their counsel's failure to provide conflict-free representation, apparent failure to recognize the conflict of interest, failure to request separate counsel for each defendant, and presentation of a defense for Hawkins that was directly detrimental to petitioners' defense, petitioners had ineffective assistance of  counsel in this respect.

Moreover, the fact that inculpatory recorded statements by Hawkins, Tyrone, and Tony were played for the jury in the presentation of the State's case, before any of them testified and without any objection by defense counsel, was damaging to every defense.   Although a defendant's confession or inculpatory statement is admissible in evidence against him, it is hearsay as against his co-defendants and defense counsel should have objected or moved for severance of the trials. La.C.E. art. 801.

Defendants also allege that defense counsel was ineffective for failure to request a severance of trials. A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. State v. Prudholm, 446 So.2d 729, 741 (La. 1984). That situation was clearly presented in this case, since Hawkins blamed Tony and Tyrone for his involvement in the

19

crimes, and the motion would have been clearly supported by Hawkins' previously recorded statement implicating Tony and Tyrone. Therefore, petitioners' counsel was ineffective for failing to request a severance of their trials.

Therefore, Tony and Tyrone Banks should be granted habeas relief due to ineffective assistance of trial counsel who failed to provide conflict-free representation.

<u>Ground No. 2 - Opening Statement</u>

Next, Tony and Tyrone contend the prosecutor's opening remarks to the jury, which informed them of Easley's guilty pleas entered before the trial, were plain error.

The opening statements are not included in the trial transcript (See Doc. 47). Since the State does not dispute that the prosecutor made such remarks in his opening statement, the petitioners' factual allegations as to the prosecutor's opening statement will be assumed to be correct for purposes of this analysis.

Defendants themselves called Stanton Easley as a witness and had him testify on direct examination that he had pleaded guilty on the first morning of trial to two counts of armed robbery and one count of possession of a firearm by a convicted felon (Doc. 46, Tr. p. 142/176). Easley also testified as to the how the robberies took place and took responsibility for getting the others involved in them (Doc. 46, Tr. pp. 145/176-159/176).

There is no need to advise the jury or its prospective members that someone not in court, not on trial, and not to be tried, has pleaded guilty.  The prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious.  U.S. v. Hansen, 544 F.2d 778, 780 (5th Cir. 1977)(codefendant pleaded guilty before the trial commenced). It is well-settled that a codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt.  U.S. v. Ramos-Cardenas, 524 F.3d 600, 610 (5th Cir.), cert. den., __ U.S. __, 129 S.Ct. 247, 403 (2008).  Therefore, it was error for the prosecutor to inform the jury in his opening statement that codefendant Easley had pleaded guilty.

However, if the codefendant testifies, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness. U.S. v. Baez, 703 F.2d 453, 455 (10th Cir. 1983).  Also, Ramos-Cardenas, 524 F.3d at 610, citing Baez, 703 F.2d at 455.  In the case at bar, the petitioners called Easley to testify on behalf of the defense in an apparent attempt to exculpate themselves; Easley testified as to his guilty pleas and further testified that, at least as to the Pizza Hut robbery, he pressured the petitioners into participating and stated that neither Tony or Tyrone was actually armed (except for Tyrone's BB gun).

Since the State prosecutor's opening statement referred to

21

evidence which was later also presented in court by the defense, Tyrone and Tony were not prejudiced by the prosecutor's opening statement.

This ground for relief is meritless.

Grounds Nos. 3 & 7 - Jury Instructions

Next, petitioners contend they were denied due process and a fundamentally fair trial due to the trial judge's failure to instruct the jurors concerning flight, and that their counsel was ineffective for failing to request such an instruction. Specifically, petitioners contend the trial judge should have instructed the jury that evidence of flight, taken alone, does not raise a legal presumption of guilt.  The record is devoid of a transcript of any pretrial motions or discussions as to jury instructions; the trial transcript begins with the first witness's testimony.  Therefore, the court cannot tell whether defense counsel requested such an instruction or objected to the lack of one.

The fact that a jury instruction was incorrect under state law is not a basis for federal habeas relief.  A federal court may reverse a state criminal conviction based upon erroneous jury instructions only when the instruction in question rendered the entire trial fundamentally unfair.  Gissendanner v. Wainwright, 482 F.2d 1293, 1300 (5th Cir. 1973).  Also, Montoya v. Scott, 65 F.3d 405, 409 (5th Cir. 1995), cert. den., 517 U.S. 1133, 116 S.Ct. 1417

22

(1996).

Under Louisiana law, evidence of flight and attempt to avoid apprehension is relevant. State v. Brown, 322 So.2d 211, 218 (La. 1975). It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt, regardless that the evidence of flight may disclose another crime. State v. Graves, 301 So.2d 864, 867 (La. 1974), and cases cited therein. If there is evidence of flight, the jury may be instructed properly to consider such flight as a circumstance tending to prove guilt in connection with the other circumstances in evidence. State v. Hills, 241 La. 345, 129 So.2d 12 (La. 1960).

In the case at bar, there was sufficient testimony of flight after the crime was committed to warrant an instruction on flight. Although the trial judge did not give an instruction as to flight, he did instruct that "[c]ircumstantial or indirect evidence is evidence with [sic], if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists" (Doc. 46-2, p. 163/176).

Thus, the instruction on flight is simply a more specific version of the general instruction given by the trial judge. The petitioners wanted the trial judge to also instruct the jury that the opposite conclusion may be drawn; that flight does not necessarily indicate guilt. However, that instruction could not have been given without the instruction that it may indicate guilt.

23

The jury was free to draw either inference from the evidence of flight, as indicated by the general instruction on circumstantial evidence. Therefore, defendants have not shown prejudice from the court's failure to give an instruction on flight.

Petitioners also contend they had ineffective assistance due to their attorney's failure to request a special jury charge on flight. Since there was no prejudice to petitioners arising from the lack of a flight instruction, petitioners cannot show they had ineffective assistance of counsel in this respect.

These grounds for relief are also meritless.

Grounds Nos. 4 & 7 - Double Jeopardy

Next, the petitioners contend the cumulative armed robbery charges, tried jointly, constituted double jeopardy, and that they had ineffective assistance of counsel due to counsel's failure to file a motion to quash the indictment for double jeopardy. Petitioners contend they should only have been charged with one count or robbery for each location robbed, because each location constitutes one continuous act.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Clause protects a criminal defendant from multiple prosecutions as well from multiple punishments for the same criminal offense. U.S. v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 2855-56 (1993). Similar protections are

offered by Article I, § 15 of the Louisiana Constitution. <u>State v. Jackson</u>, 99-KA-1256 (La.App. 5th Cir. 7/25/2000), 767 So.2d 848, 852.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64.

In the case at bar, petitioners' argument that each robbery location constituted one robbery is erroneous. Armed robbery is the taking of anything of value belonging to another *from the person of another*-not from a location or store. Thus, each victim robbed constitutes one robbery. See <u>Jackson</u>, 767 So.2d at 853. Therefore, the petitioners were properly charged with a separate count for each person robbed. Since petitioners were not subjected to double jeopardy, they cannot show they had ineffective assistance of counsel in this respect.

These grounds for relief are also meritless.

<u>Grounds Nos. 5 & 7 - Right to Confront and Cross-Examine</u>

Next, petitioners argue they were denied their rights to confront and cross-examine one of the alleged robbery victims, JoAnn Davis (an EZY Pay Furniture store employee), in violation of the Sixth Amendment, because she was away on vacation during the trial. Petitioners further argue that, because there was no evidence that anything was stolen from Davis, there is insufficient

25

evidence to support their conviction for armed robbery of Davis. Petitioners also allege they had ineffective assistance of counsel in these respects.

The sheriff attempted to serve a subpoena on JoAnn Davis on August 2, 2000 at the request of the State (Doc. 46, p. 45/135), but was unable to because she was in California on vacation; it was noted on the subpoena that she would not be back in time for trial on August 15, 2000 (Doc. 46, p. 47/135; Doc. 46, Tr. p. 44/150)). The record does not show that either side asked for a continuance due to her unavailability (Doc. 46). Therefore, JoAnn Davis did not appear and testify at the trial, despite the fact that defendants were accused of having robbed Davis.

In order to prove the petitioners had robbed JoAnn Davis, the State elicited testimony from other witnesses that petitioners had taken things from JoAnn Davis. Linda Anderson, an employee at EZY Pay Furniture (Doc. 46, Tr. pp. 35-36, 43-44/150), testified, "Well, JoAnn had emptied her pockets. I don't know what she had, but they took Gloria Gunter's purse. ...I don't know, they just told JoAnn to empty her pockets." Another EZY Pay employee, Gloria Gunter, (Doc. 46, Tr. p. 80/150), testified that, "[Davis] threw everything in her pockets out and they patted her down, too. ...Her keys. I know that. ... I don't know [what other things].").

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right

... to be confronted with the witnesses against him." This bedrock procedural guarantee applies to both federal and state prosecutions. Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359 (2004), citing Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065 (1965). The right to confront one's accusers is an ancient concept and the common-law tradition is one of live testimony in court subject to adversarial testing. Crawford, 541 U.S. at 43, 124 S.Ct. at 1359. The right of confrontation means more than being allowed to confront the witness physically. Delaware v. Van Arsdall, 475 U.S. 674, 678, 106 S.Ct. 1431, 1434 (1986), citing Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110 (1974). The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Van Arsdall, 475 U.S. at 678, 106 S.Ct. at 1434, citing Davis, 415 U.S. at 315-316, 94 S.Ct. at 1110

In the case at bar, there is no evidence that Davis accused petitioners of taking anything from her. There was no statement from Davis introduced at trial, and Davis did not testify against petitioners at trial. Therefore, although Davis was alleged by the State to have been a victim of armed robbery, there is no evidence that Davis ever actually claimed to have been robbed. Moreover, no witness testified as to anything Davis said; hearsay is not an issue in this instance. Consequently, there does not appear to be a violation of the Confrontation Clause.

27

However, petitioners point out, correctly, that it was never proven that anything of value was taken from JoAnn Davis.  Since Davis was not present to testify as to whether anything was taken from her, the State relied on the testimony of other witnesses (Linda Anderson and Gloria Gunter) to show petitioners forced Davis to empty her pockets.  Neither witness knew what was in Davis' pockets (other than her keys) and no one knew whether anything of value was actually taken from her.

Despite the lack of evidence that anything of value was taken from Davis, both Tony and Tyrone were convicted of armed robbery of Davis.  Hence, defendants contend not only that their right to confront and cross-examine Davis was violated and that there was insufficient evidence to support their conviction for the armed robbery of Davis.

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163, 115 S.Ct. 1128, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt

beyond a reasonable doubt.  <u>West v. Johnson</u>, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847 (1997), citing, <u>Jackson</u>, 443 U.S. at 322-26, 99 S.Ct. at2791-92).  To apply this standard, the court looks to elements of the offense as defined by state substantive law.  <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2001).

As stated above, under La.R.S. 14:64, armed robbery is the *taking of anything of value* belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.  A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to a great deal of deference by a reviewing court.  <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433-35, 103 S.Ct. 843, 850-51 (1983).

In the case at bar, the credibility of the witnesses is not at issue.  Instead, accepting *as true* all of the testimony presented at trial, there is simply no evidence that anything of value was taken from Davis.  Without evidence that anything of value was taken from Davis, a necessary element of the offense of armed robbery was not proven by the State.  Therefore, no rational trier of fact could have found proof beyond a reasonable doubt that petitioners were guilty of armed robbery of JoAnn Davis.  There is insufficient evidence to support Tony's and Tyrone's convictions

for armed robbery of Davis.

It was clearly ineffective assistance of counsel for defense counsel to fail to move for a directed verdict as to the charge for armed robbery of Davis and fail to appeal as to the sufficiency of the evidence on that conviction.   Therefore, Petitioners had ineffective assistance of counsel in this regard.

Accordingly, it will be recommended that petitioners' convictions and sentences for armed robbery of JoAnn Davis be reversed and vacated for insufficient evidence and ineffective assistance of counsel, and that a conditional writ of habeas corpus be granted on that conviction.

Ground No. 6 - Cumulative Errors

Next, petitioners contend the cumulative errors involved in this case demonstrate petitioners' fundamentally unfair convictions in violation of the Fourteenth Amendment.[4]  Since the undersigned finds reversible errors in the violation of petitioners' right to conflict-free counsel and insufficient evidence to prove armed robbery of JoAnn Davis, this ground for relief is moot.

Ground No. 7 - Ineffective Assistance of Counsel

In addition to the instances discussed above, petitioners also

---

[4] Several errors taken together can violate a petitioner's right to due process and cause the trial to be fundamentally unfair.  However, it is a highly exceptional case which warrants relief on a cumulative error analysis.  The fundamentally unfair trial which violates due process is rare, but when it does occur this analysis is available to petitioners. Derden v. McNeel, 938 F.2d 605, 610 (5th Cir. 1991), on rehearing, 978 F.2d 1453 (5th Cir. 1992), cert. den., 508 U.S. 960, 113 S.Ct. 2928 (1993).

contend they had ineffective assistance of counsel due to defense counsel's (1) failure to request pretrial discovery and failure to conduct even minimal pretrial investigation, (2) failure to file a pretrial motion to suppress inculpatory statements and evidence, (3) failure to file a motion for reconsideration of sentence, post-judgment verdict of acquittal, or motion for new trial, (4) failure to object or request mistrial when a state witness testified concerning other crimes evidence, (5) failure to object when jurors were permitted to retire for deliberation with written jury charges in their possession, and (6) the cumulative effect of defense counsel's errors.  In addition, Tyrone contends defense counsel erred in failing to request a severance and instead requested joinder.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. Jones v. Cain, 227 F.3d 228 (5th Cir. Oct. 2000), and cases cited therein.

1.

First, petitioners allege their attorney failed to request pretrial discovery and conduct even minimal pretrial investigation.

31

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052, 2066, 80 L.Ed.2d 674 (1984). However, bare allegations do not suffice. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. Nelson, 989 F.2d at 850, citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).

Even accepting their allegation as true, petitioners have not demonstrated any prejudice by alleging what their attorney would have found through discovery and investigation and how it would have affected the outcome of their case.

2.

Petitioners also contend they had ineffective assistance of counsel due to their attorney's failure to file a motion to suppress inculpatory statements and evidence.

The Testimony

At trial, when the State moved to introduce the defendants' inculpatory statements during the presentation of its case-in-chief, defense counsel objected to the lack of foundation (Doc. 46-2, pp. 97-98/176). In response, the State showed, through testimony by Officer Dale Cowan, that Easley, Tony and Tyrone all

32

indicated they wanted an attorney and refused to give statements, but that Hawkins wanted to give a statement (Doc. 46-2, p. 98/176). However, the next day, the warden at the jail contacted the police and said Easley, Tony and Tyrone had changed their minds and wanted to give statements (Doc. 46-2, p. 98/176). O

Officer Cowan testified that the three defendants indicated they had gotten together, talked about it, and decided to give statements, and they had not been threatened, deprived of comforts, or put in any kind of discomfort (Doc. 46-2, p. 99/176). Officer Cowan testified that he took recorded statements from Tyrone and Tony on April 4th (Doc. 46-2, pp. 100-102/176). Officer Cowan further testified, although the judge had ordered that the defendants be drug screened, he was unaware the drug screen had shown the presence of drugs in the defendants (Doc. 46-2, pp. 102/176). Officer Freddie Mount testified that the drug screen reports showed positive results for Easley, Tyrone, Tony and Hawkins (Doc. 46-2, pp. 103-105/176).

Tyrone Banks testified (outside of the jury's presence) on the limited issue of admissibility of his pretrial statement (Doc. 46-2, pp. 105-106/176). Tyrone testified that for two days, on April 2 and 3, he had smoked marijuana laced with cocaine and drank a little bit of alcohol, he was high when the robbery at EZY Pay occurred, and they shared more drugs when they drove away from the EZY Pay robbery (Doc. 46-2, pp. 105-107/176). Tyrone said he was

33

still high when he made his statement to the police (Doc. 46-2, p. 108/176).

Tony likewise testified that, on April 2 and 3, he had one drink, but had smoked marijuana laced with powder cocaine all day up until he was arrested and was still high when he gave his statement (Doc. 46-2, pp. 108-110/176).

Hawkins also testified that, on April 2 and 3, he snorted powder cocaine, then drank gin and beer until he was arrested, and was still under the influence of cocaine and alcohol when he gave his statement to the police (Doc. 46-2, pp. 110-111/176). Hawkins also testified that Officer Dennis Cowan told him that, if he did not have anything to do with the crimes, he would let Hawkins go, so Hawkins wanted to explain to him why he was not guilty (Doc. 46-2, p. 112/176). Hawkins testified that, had he not been under the influence, he probably would not have given Officer Cowan a statement (Doc. 46-2, Tr. p. 114/176).

After this testimony, the State moved to introduce the statements and the trial judge ruled that a proper foundation had been established, without further objection from defense counsel (Doc. 46-2, Tr. p. 115/176). The recorded statements were played for the jury ((Doc. 46-2, Tr. pp. 116, 118, 122/176).[5]

Hawkins gave a statement to the police on April 3, 2000, the

---

[5]    The statements were not transcribed by the court reporter for the appellate record.  The undersigned ordered them transcribed for this motion.

day he was arrested after the EZ Pay robbery (Doc. 59, p. 1).

Hawkins' rights were explained and he stated he understood them

(Doc. 59, p. 2). Hawkins testified that, when he went to Ferriday

with the other defendants on April 3, 2000, they pulled up to EZ

Pay and the others jumped out of the car wearing bandanas over

their faces (Doc. 59, pp. 4-5). Hawkins said they told in to stay

in the car or they would kill him, and pointed a gun at his head;

they returned after about three minutes, carrying radios (Doc. 59,

p. 5). Hawkins said they lost control of the car and ended up in

a ditch, where they all jumped out and ran, until the police fired

a couple of shots at them and Hawkins laid on the ground (Doc. 59,

p. 5). Hawkins said there were three guns, one hand gun and two

that were big like machine guns, and all three of the other

defendants were armed (Doc. 59, pp. 6-7). Hawkins testified that

he did not participate in the Pizza Hut robbery (Doc. 59, p. 8),

and he was in the car during the EZ Pay robbery only because he was

scared and the others made him stay (Doc. 59, p. 10). Therefore,

Hawkins' out-of-court statement was exculpatory toward himself and

directly incriminated Tony and Tyrone.

On April 4, 2000, Tony's rights were read to him and he

indicated that he understood them and waived them, and that he had

asked for an attorney to be present when he spoke with the police

the day before (Doc. 57, p. 2). The next day, April 4, 2000, Tony

admitted he had sent word to the police that he wanted to make a

35

statement after all, and that he was not coerced or forced to do so (Doc. 57, p. 3). Tony stated that he, Tyrone, and Easley had robbed the people in the Pizza Hut in order to get some easy money (Doc. 57, p. 5). Tony stated that, when he and Tyrone ran into the Pizza Hut, he saw Easley hit a guy on the head with pistol, then he and Tyrone left with about $200 altogether (Doc. 57, p. 6). Afterward, Easley bragged about it to several people (Doc. 57, p. 7). Tony stated that, the next day, he, Tyrone, Hawkins and Easley were riding around, when Easley told them they were going to rob the EZ Pay store for "easy money" (Doc. 57, p. 8). When none of the others wanted to do that, Easley went into the store by himself (Doc. 57, p. 8). Tony said he finally went in after Easley "to make sure ain't nobody get hurt," and went in after Easley, then Tyrone went in after Tony, and they all left (Doc. 57, p. 9). Tony stated that he did not touch any money and did not hurt anyone (Doc. 57, p. 9). When they left, Tyrone was driving (Doc. 57, p. 9). Tony stated that he carried a BB gun during both robberies (Doc. 57, pp. 5, 9-10). Therefore, Tony's out-of-court statement was inculpatory and directly incriminated Tyrone, but tended to exculpate Hawkins.

Tyrone also gave a statement on April 4, 2000; his rights were read and he stated he understood that them and waived them without threats or promises (Doc. 58, pp. 1-2). Tyrone stated that Easley, Tyrone, and Tony went to Pizza Hut, Easley jumped out of the car

and they followed him, all wearing bandannas over their faces; Tony had a BB gun and Tyrone and Easley each had a gun (Doc. 58, p. 5). After the clerks put the money in a bag and emptied the safe, Easley told everyone to lay down, then he hit one man on the head with his gun, and they left (Doc. 58, p. 6.). Tyrone said they each got $150 to $175 from that robbery. Later, Tyrone heard Easley telling other people about the robbery (Doc. 58, p. 7). Tyrone said he did not touch anyone during the Pizza Hut robbery (Doc. 58, p. 8). Tyrone stated that, although Easley had told them it would be easy money and no one would be hurt, he had hit a man on the head, so Tyrone did not want to have anything else to do with Easley (Doc. 58, p. 9). However, the next day, Easley had Tyrone stop at the EZ Pay Furniture store and Easley handed out guns; Tyrone said he told Tony not to go (Doc. 58, p. 9). Tyrone stated that Tony took a fake plastic gun from Easley and followed Easley into the store, so Tyrone, who was unarmed, went in to get Tony (Doc. 58, pp. 10, 13). Tyrone said that he talked Tony into leaving the store and they had gotten into the car (where Hawkins was still sitting) and started it when Easley ran up to the car with purses and a radio; Tyrone said Tony had also taken a radio, also (Doc. 58, p. 10). They stopped the car so Easley could get in, then drove off with the police chasing them at high speed (Doc. 58, p. 10). When they stopped car and ran, Easley threw a chrome-plated pistol on the ground (Doc. 58, p. 11). Finally, Tyrone

37

stated that Antonio Hawkins just happened to be in the car with them when Easley decided to rob EZ Pay, and did not have anything to do with the robbery (Doc. 58, p. 12). Therefore, Tyrone's out-of-court statement was inculpatory and directly incriminated Tony, but tended to exculpate Hawkins.

The Law

It is a violation of the Confrontation Clause to introduce the incriminating statement of a codefendant without first proving the codefendant is unavailable to testify and providing the defendant with an opportunity to cross-examine the codefendant.

A defendant has a Sixth Amendment right to face his accuser. This right includes the ability to block a non-testifying co-defendant's confession from being introduced at one's trial. Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620 (1968). The Confrontation Clause applies to out-of-court statements introduced at trial, as well as to in-court testimony. Crawford v. Washington, 541 U.S. 36, 50-51, 124 S.Ct. 1354, 1364 (2004). The Fifth Circuit Court of Appeals has limited the ability to block a non-testifying co-defendant's confession from being introduced at one's trial, as set forth in Bruton, when the confession is admitted at the invitation of the defendant or when such admissions are harmless beyond a reasonable doubt. United States v. Matthews, 178 F.3d 295, 300 (5th Cir. 1999), cert. den., 528 U.S. 944, 120 S.Ct. 359 (1999).

38

The Fifth Circuit discussed the issue in U.S. v. Harper, 527 F.3d 396 (5th Cir. 2008), cert. den., 129 S.Ct. 212 (U.S. 2008). A non-testifying witness's out-of-court statement, including a co-defendant's confession, that facially incriminates a defendant violates the defendant's Sixth Amendment right to confrontation, even when the jury is instructed not to consider the prior statements as evidence against the defendant. Harper, 527 F.3d at 403, citing Gray v. Maryland, 523 U.S. 185, 192, 118 S.Ct. 1151 (1998), and Richardson v. Marsh, 481 U.S. 200, 207, 107 S.Ct. 1702 (1987). Out-of-court statements of a non-testifying witness, that only inferentially incriminate a defendant when linked to other evidence introduced at trial, do not violate the Sixth Amendment because an instruction not to consider such a statement will be considered effective to remove it from the jury's consideration. Harper, 527 F.3d at 403, citing Richardson, 481 U.S. at 208-209, 107 S.Ct. 1702. However, statements that obviously incriminate a defendant, involve an inference that a jury could make immediately without hearing other evidence, and that a judge could easily predict prior to trial, before hearing any evidence, would be barred under the rationale of Bruton and violate the Confrontation Clause. Harper, 527 F.3d at 403, citing Gray, 523 U.S. at 196-197, 118 S.Ct. 1151.

Any violation of the confrontation clause in this case is subject to a harmless error analysis. Van Arsdall, 475 U.S. at

684, 106 S.Ct. at 1438.[6]

Tony's out-of-court statement was inculpatory and directly incriminated Tyrone, but tended to exculpate Hawkins. Tyrone's out-of-court statement was inculpatory and directly incriminated Tony, but tended to exculpate Hawkins. Hawkins' out-of-court statement was exculpatory toward himself and directly incriminated Tony and Tyrone. None of the three defendants testified at trial. Therefore, under the Bruton rationale, the petitioners should have been able to block their non-testifying co-defendants' confessions from being introduced at their trial. Had the defense attorney objected to the introduction of the statements, the trial judge could have made an in camera inspection and easily predicted they would be barred for violating the Confrontation Clause; if the trial judge had refusing to bar the statements, the issue would have been preserved for appeal. Although petitioners attempted to raise this claim on direct appeal, the Court of Appeal found the claim was procedurally barred due to defense counsel's failure to object to the introduction of the statements. Since it is clearly

---

[6] In Crawford v. Washington, 541 U.S. 36, 50-51, 124 S.Ct. 1354, 1364 (2004), the Supreme Court held it is automatically reversible error to admit into evidence an out of court statement by a non-testifying co-defendant in violation of the Confrontation Clause, where the witness was not unavailable and the defendant did not have a prior opportunity to cross-examine the witness. However, the automatic reversal holding of Crawford is not retroactively applicable to cases on collateral review. Whorton v. Bockting, 549 U.S. 406, 127 S.Ct. 1173 (2007). Therefore, a harmless error analysis is applicable to the case at bar.

a meritorious claim, Tony and Tyrone have shown they had ineffective assistance of counsel in this respect, also.

Therefore, defense counsel's failure to object to the introduction, during the State's presentation of its case, of Tony's, Tyrone's and Hawkins' incriminating statements, in violation of their co-defendants' rights under the Confrontation Clause, constituted ineffective assistance of counsel. Tony and Tyrone are entitled to habeas relief on this ineffective assistance of counsel claim, also.

3.

Petitioners contend their attorney was ineffective for failing to file a motion for reconsideration of sentence, post-judgment verdict of acquittal, or motion for new trial.

Under Louisiana law, the failure to file or make a motion to reconsider sentence precludes the defendant from raising an excessive sentence argument on appeal. La.C.Cr.P. art. 881.1(D); State v. Duncan, 94-KA-1563 (La. App. 1st Cir. 12/15/1995), 667 So.2d 1141. Defense counsel appealed Tyrone's and Tony's sentences on the grounds of excessiveness, but the claims were held procedurally barred due to defense counsel's failure to make an oral or written motion to reconsider sentence (Doc. 1). One dissenting judge found the sentences were excessive, served no useful purpose, and constituted the needless infliction of pain and suffering approaching cruel and unusual punishment (Doc. 1). The

41

dissenting judge also noted that defense counsel was ineffective for failing to object or move to reconsider the sentences (Doc. 1).

In Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987), cert. den., 484 U.S. 1014, 108 S.Ct. 717, 98 L.Ed.2d 667 (1988), the court stated the following standard by which a federal habeas court may review a state trial court's sentencing decision:

> "Although wide discretion is accorded a state trial court's sentencing decision and claims arising out of that decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. If a sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounts to an 'arbitrary or capricious abuse of discretion,' or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty."

Clearly, defense counsel should have lodged a motion to reconsider sentence. As noted by the majority in the court of appeals, petitioners' individual sentences are within the maximum statutory limit of 99 years per count, as set forth in La.R.S. 14:64. However, as noted by the dissenting state court of appeal judge, a 545 year sentence serves no useful purpose. In fact, La.C.Cr.P. art. 883 provides a presumption that sentences for two or more offenses that constitute parts of a common scheme or plan, such as the offenses in this case (the individual robberies at each location were parts of a common scheme), shall be served concurrently unless the court expressly directs otherwise.

42

In this case, the sentences were imposed consecutively without benefit of probation, parole or suspension of sentence, as required by law.  La.R.S. 14:64.   Therefore, whether the sentences were imposed consecutively for 545 years, or concurrently for 99 years, the effect for Tony and Tyrone is the same-a lifetime in prison. As a result, petitioners cannot show that counsel's failure to lodge a motion to reconsider sentence actually prejudiced them.

Since petitioners cannot show prejudice, they have not shown they had ineffective assistance of counsel in this respect.

4.

Petitioners next contend their attorney was ineffective for failing to object or request mistrial when state witness Officer Dale Cowan testified as to the crack cocaine he found inside the vehicle.   Petitioners contend his testimony was "other crimes" evidence for which the State did not give a <u>Prieur</u> notice and to which defense counsel failed to object.

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief.   <u>Panzavecchia v. Wainwright</u>, 658 F.2d 337, 340 (5th Cir. 1981).   Thus, claims challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law.   In reviewing state

43

court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause. Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir.), cert. denied 524 U.S. 979, 119 S.Ct. 28 (1998), and cases cited therein.

The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief if fundamental fairness was prevented thereby. What elevates the mistake to a constitutional plane is at least two-fold. First, the mistake must be material in the sense of a crucial, critical, highly significant factor. Second, it must have some state complicity in it. Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215, 103 S.Ct. 1215, 75 L.Ed.2d 453 (1983), and cases cited therein. Also, Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

Louisiana law generally prohibits the admission of "other crimes evidence," that is, evidence of criminal conduct uncharged in the subject indictment, with exceptions for proving intent, system or res gestae. Robinson v. Whitley, 2 F.3d 562, 566 (5th Cir. 1993), cert. den, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994), citing State v. Prieur, 277 So.2d 126, 128 (La. 1973). Evidence of other crimes can be admitted to show intent, knowledge or system, but not to show motive. However, the Fifth Circuit has

44

held, in <u>Webb v. Blackburn</u>, 773 F.2d 646, 652 (5th Cir. 1985), that other crimes evidence introduced to show motive, in violation of Louisiana evidentiary rules, does not rise to the level of a constitutional violation.

Evidence of other crimes may also be admitted when it forms part of the *res gestae* of the charged offense. <u>Robinson</u>, 2 F.3d at 566. To constitute *res gestae* the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous action. In such cases the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. Evidence which does not form part of the *res gestae*, but which merely depicts the defendant as a bad man, may constitute a due process violation if it renders the trial fundamentally unfair. See <u>Robinson</u>, 2 F.3d at 567. No <u>Prieur</u> notice is necessary when the other crimes evidence sought to be introduced forms an integral part of the crime charged. <u>State v. Broussard</u>, 95-792 (La. App. 3d Cir. 12/6/95), 664 So.3d 835, 838.

In the case at bar, the cocaine was obviously not part of the armed robberies and did not tend to show intent, knowledge or system. It was merely something found in the defendants' vehicle which tended to show defendants were "bad men." Therefore, the cocaine was improperly introduced into evidence by the State, and

45

defense counsel should have objected to it.

However, the cocaine was not a crucial, critical, highly significant factor in the armed robbery trial.  Except for their conviction for robbing Jo Ann Davis, the evidence appeared to support the petitioners' armed robbery convictions.  Therefore, petitioners cannot show their trials were rendered fundamentally unfair by the introduction of the cocaine.

This ground for habeas relief is meritless.

5.

Petitioners also argue their attorney was ineffective for failing to object when jurors were permitted to retire for deliberation with written jury charges in their possession.

La.C.Cr.P. art. 801 provides that a written charge may be delivered to the jury if consented to by both the defendant and the state in open court but not in the presence of the jury. Petitioners contend the defense did not consent to giving the jurors a written copy of the jury charge.  The trial record does not reflect any discussion of the matter between the trial judge and counsel.  At least two state courts have found such an error harmless and does not constitute ineffective assistance of counsel. State v. Eiskina, 42,492-KA (La. App. 2d Cir. 9/19/2007), 965 So.2d 1010, 1015; State v. Joseph, 03-KA-1445 (La. App. 5th Cir. 5/26/2004), 875 So.2d 1011.

Even assuming consent was not given by the defense, petitioners have neither alleged nor shown how they were

46

prejudiced.  The instructions were read in their entirety to the jury before the jury retired with a written copy of the instructions.  Since petitioners have not shown prejudice, they have not shown they received ineffective assistance of counsel in this respect.

6.

Petitioners argue they had ineffective assistance of counsel due to the cumulative effect of defense counsel's errors.

As discussed above, petitioners have proven reversible error in some respects.  Therefore, this ground for relief is moot.

Additional Grounds Alleged by Tyrone

1.

In addition, Tyrone contends defense counsel was ineffective for failing to request a severance and instead requested joinder. Defense counsel's failure to request a severance was discussed above.

As for the joinder, there is no evidence in the record that defense counsel requested a joinder of the cases.  Two separate Bills of Information were filed, one with four counts of armed robbery against all four defendants and the other with two counts of armed robbery against Tony, Tyrone, and Easley, as well as additional bills of information against Tyrone and Tony individually, charging each of them with possession of a firearm by a convicted felon.  Presumably, the State decided to try all four defendants together.  The record does not reflect a motion by any

party or how the joinder came about.

However, it does not appear that defense counsel requested a joinder, since he testified that he asked the defendants if they wanted to have their trials severed (Doc. 1, Ex. 3, pp. 20-21; Doc. 48-4, p. 35/84).  It is unlikely that defense counsel would have discussed filing a motion to sever after having filed a motion for joinder.  Since petitioners have not shown their counsel moved for a joinder of their cases to those of their co-defendants, petitioners have not shown they had ineffective assistance of counsel in this respect.

Therefore, this ground for relief is meritless.

2.

Finally, Tyrone contends it was reversible error for the prosecution to elicit commitments and promises from prospective jurors' voir dire.  Tyrone is referring to the prosecutor's question, "If the State proves to you that the defendants are guilty of the crimes that they are charged, will you find them guilty?"

A party interviewing a prospective juror may not ask a question of pose a hypothesis which would demand a commitment or prejudgment from the juror or which would pry into the juror's opinions about issues to be resolved in the case.  State v. White, No. 39,745-KA (La. App. 2d Cir. 2005), 907 So.2d 228, 231.  This was not an improper question and the cases cited by Tyrone in his brief are not analogous (Doc. 1-2, pp. 17-18).  The prosecutor

merely asked each juror if he or she would be able to do his or her duty as a juror and vote to convict if the evidence warranted a conviction.  See White, 907 So.2d at 231.

This ground for relief is meritless.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the court find that Tony Banks and Tyrone Banks were denied their rights to counsel, a fair trial, and the effective assistance of counsel, and that they be GRANTED conditional writs of habeas corpus, ordering their discharge from custody unless the State of Louisiana returns them to the 7th Judicial District Court, Concordia Parish, Louisiana, for re-arraignment within 60 days after the date of this Court's judgment.

IT IS FURTHER RECOMMENDED that the court appoint counsel for Anthony Hawkins and Stanton Easley to determine whether they are entitled to some type of post-conviction relief which raises the grounds discussed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3rd day of ____March____, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE